[Civ. No. 8041. Second Appellate District, Division Two.—November 2, 1933.]

DANNY SISLEY, an Infant, etc., Respondent, v. GORDON COLE, Appellant.

H. L. SISLEY, Respondent, v. GORDON COLE, Appellant.

Griffith & Thornburgh for Appellant.

No appearance for Respondent.

ARCHBALD, J., *pro tem.*—On the morning of July 6, 1930, plaintiff H. L. Sisley and his family, including his five

year old son, the plaintiff Danny Sisley, who was injured in the accident which gave rise to this suit, left Alhambra with the family of Charles T. Allen, which included his wife, Belle Allen, and his son Norman, each family traveling in their respective automobiles. At about 10:30 or 11 o'clock they stopped for lunch in the shade of some trees on the northerly side of the boulevard in the city of Santa Barbara, but not in a residence or business zone where limited speed regulations prevailed. Both cars were parked parallel with and from eight to ten inches from the northerly curb, the Sisley car in front and the Allen car from six to eight feet behind it. After lunch Mrs. Allen was standing in front of the Sisley car, holding Danny, who was sitting on the radiator. She put him down on the pavement and he immediately walked around to the side door of the Sisley car on the street or left side thereof. As she watched the boy, who was holding to a string which fastened some luggage to the car, she "heard a slight collision, like the scraping of two cars", whereupon she "looked up quick, and just then this car [defendant's] looked as if it was coming right at me", and "I jumped back and turned half way around when the car went by". Defendant's car was "right opposite" the Sisley car when Mrs. Allen first observed it, and out in the street "about a foot and a half . . . It was zigzagging, going back and forward; . . . it looked as if it was going to cut right in front of Mr. Sisley's car." She did not see the car strike Danny, but next saw him as "he rolled out from under" defendant's car after it passed her, "10 or 12, maybe 15 feet from the north curb".

The mother of Danny testified that she saw the boy walk around to the side of the car after he was placed on the pavement by Mrs. Allen, and that she then walked back to the right side of the car, where she was heating milk for the baby, and that as she "reached down to pick up the bottle I heard a slight collision. Q. What did that sound like? A. I thought somebody had hit the back of one of the cars, my first impression, it sounded like metal hitting, like a scrape; . . . and I looked across the hood and I saw Mrs. Allen. She jumped back. I saw this [defendant's] car go on, and about 30 feet more I saw this child roll out from the back of the car. . . . I did not at the time realize it was my little boy." Mr. Allen also testified to hearing a

noise "like a collision, scraping noise" and that just as he raised up he "saw the car coming right in front of Mr. Sisley's car, . . . from a foot and a half to two feet" away from it; that the sound he heard "came from the rear" of his car; that when he examined his car later at the hospital the "left rear bumper was badly bent, and my fender on the left side was badly scraped", and that such condition did not exist when he washed the car the night before; that he took the injured boy in his car to the hospital; that "there was no car within 8 or 10 feet of his car while he was at the hospital"; that his car was there parked in the "private drive-way" of the hospital and that no car entered such driveway while he was there. His son Norman Allen gave similar testimony relative to the "small collision" in the direction of the "rear of our Oakland", and as to seeing defendant's car go past the Sisley car and his mother stepping back as he looked up, and also as to the condition of the Allen car before and after the accident.

The evidence of the defense is in direct conflict with that of plaintiff, and in effect is that defendant was passing the two cars and upon seeing a man he turned toward the center of the street; that when opposite the Allen car he heard a woman scream and glanced in that direction; that when he looked back he saw Danny about two feet in front of him and apparently walking across the street; that he turned to the right to avoid hitting the boy, but that his left head-light struck him, denting the lower half of the rim and splitting the glass "about three ways"; that at no time did he go closer to the two cars than five feet, and that his car did not show that it had come in contact with any other object, either on the front or the right fenders.

The jury returned a verdict for defendant. The court granted plaintiff's motion for a new trial and from such order defendant has appealed.

■ Appellant contends that there is no conflict in the evidence and that the court abused the discretion vested in it in making the order appealed from.

We cannot agree that there is no conflict in the evidence. Plaintiff's evidence places defendant's car within a foot and one-half or two feet of the Sisley car, and Danny was standing on the exposed side of the car when last seen by the witnesses and immediately preceding the slight collision and

scraping sound which they testified they heard and which seemed to come from the rear of the Allen car. Immediately thereafter defendant's car passed the Sisley car, where Danny Sisley was standing, and after it passed the latter rolled out from under defendant's car, the rear right wheel passing over his leg. The court might well have concluded that there was a collision with the Allen car which alarmed the child, causing him to run into the street to escape the oncoming machine, with the resulting accident. ■ On a motion for new trial the trial court may weigh conflicting evidence and decide where the preponderance lies. The jury in the first instance was charged with that duty and decided in favor of the defendant. The court then weighed such evidence and determined that its weight was on the side of the plaintiff. "If there is a substantial conflict in the evidence, the trial court will not be deemed to have abused its discretion when it has determined that the verdict . . . is against the weight of the evidence, and that there should be a new trial." (*Gordon* v. *Roberts*, 162 Cal. 506, 509 [123 Pac. 288, 289].) ■ The evidence in this case being conflicting, in our opinion, we are bound by the decision of the trial court even though we might conclude from the record that the weight of the evidence lay more in favor of the verdict rendered by the jury.

Order affirmed.

Stephens, P. J., and Craig, J., concurred.